AFFIRM and Opinion Issued January 31, 2013



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-11-01314-CV

JENNIFER LOGAN, INDIVIDUALLY AND AS REPRESENTATIVE OF
THE ESTATE OF CHRISTOPHER LOGAN, DECEASED, AND
AS NEXT FRIEND OF COLLIN LOGAN, A MINOR, Appellants

V.

IRVING CLUB ACQUISITION CORP., Appellee

On Appeal from the 116th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-11118

# MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion By Justice Francis

Christopher Logan died while retrieving golf balls from a water hazard at Las Colinas

Country Club which is owned and operated by Irving Club Acquisition Corporation. Christopher's

widow, Jennifer Logan, sued various defendants, including ICAC, for negligence and premises

liability on behalf of herself, her husband's estate, and her minor son, Collin. ICAC filed no

evidence and traditional motions for summary judgment. After granting summary judgment in

ICAC's favor, the trial court severed the claims against ICAC from the remaining claims against the

remaining defendants. In a single issue, Jennifer challenges the trial court's granting of summary

judgment, claiming genuine issues of material fact exist regarding the existence of a joint enterprise

between ICAC and Logan's employers at the time of his death, Dickie and Debbie Seeders d/b/a A-Plus Golf Ball Retrieval.[1] We affirm.

A-Plus had a two-year contract with ICAC to retrieve golf balls from water hazards on the golf course. After the contract expired, Dickie continued to contact ICAC about ball retrieval and was allowed on the course to do so. In addition to Dickie, Christopher was one of two men who retrieved balls for A-Plus.

Around four o'clock in the afternoon of June 24, 2009, Christopher arrived at Las Colinas Country Club to dive for golf balls. He borrowed a golf cart and went to the water hazard near the 18th green. Although he had previously used scuba gear to dive for golf balls, on this occasion, Christopher used a homemade air hookah system he borrowed from Dickie. At least one person saw the hookah system pumping air around 5:30 p.m. When the course closed at 9:00 p.m. and Christopher had not returned with the golf cart, employees became concerned and notified the director of the golf course. He, in turn, called the Irving Police Department. Christopher's body was recovered from the lake, and an autopsy showed he suffered carbon monoxide poisoning which resulted in his death by drowning.

In her sole issue, Jennifer contends the trial court erred in granting ICAC's motions for summary judgment because genuine issues of material facts exist regarding the existence of a joint enterprise between ICAC and A-Plus.

Because ICAC presented both no evidence and traditional grounds, we first address the challenges to ICAC's no evidence summary judgment motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A party may move for summary judgment on the ground there is no

---

[1] Jennifer originally challenged the trial court's order severing ICAC's cause from the remaining lawsuit. At oral argument, however, the parties informed the Court that the underlying lawsuit had been resolved, and the severance issue was moot. Therefore, we do not address Jennifer's second issue.

evidence of one or more essential elements of a claim or defense on which the adverse parties would have the burden of proof at trial. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam). Unless the respondents produce summary judgment evidence raising a genuine issue of material fact, the court must grant the motion. TEX. R. CIV. P. 166a(i); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002).

To succeed in a traditional motion for summary judgment, the movant must establish there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). In reviewing a summary judgment, we consider the evidence in the light most favorable to the nonmovants and resolve any doubt in their favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Where, as here, the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *W. Invs., Inc.*, 162 S.W.3d at 550.

Joint enterprise is a theory involving derivative liability in which one enterprise participant may be held responsible for a cause of action proven against another enterprise participant. *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007) (orig. proceeding) (per curiam). The elements of a joint enterprise are: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a "community of pecuniary interest" in that common purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000). The ordinary meaning of "pecuniary" is "of or pertaining to money." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 531 (Tex. 2002). However, it is not sufficient that the parties have merely a common business interest or even a common pecuniary interest. *Id.* at 527–28. Nor is the existence of monetary benefits flowing from the arrangement sufficient to satisfy this element. *Id.*

at 532. Rather, to satisfy the third element, there must be evidence the interest is monetary in nature and the monetary interest is common among the members of the group—it must be one "shared without special or distinguishing characteristics" in the relevant common purpose. *Id.*

In its motion for summary judgment, ICAC claims there is no evidence it had a joint enterprise with A-Plus because, in part, there was no evidence of community of pecuniary interest. In response, Jennifer alleges both parties had a "monetary interest in every single golf ball retrieved" and that each "received an economic gain from every single ball."

The summary judgment record shows ICAC and A-Plus had a written two-year agreement in which A-Plus agreed to retrieve and remove golf balls from the water hazards on the golf course and ICAC agreed to pay 12¢ for each golf ball removed. Even though the agreement had expired, the parties continued to do business. Although Jennifer contends this alone is some evidence of a community of pecuniary interest, we cannot agree. Nothing in the agreement or the rest of the summary judgment record shows the parties contemplated anything more than a business contract. There is no evidence of a joint project, nor is there evidence (1) the parties shared any resources in furthering a joint effort, (2) the parties pooled efforts or monetary resources to further a common goal or purpose, or (3) any monetary benefits were to be shared between ICAC and A-Plus "without special or distinguishing characteristics." *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 223 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Rather, the summary judgment evidence shows ICAC hired A-Plus to perform work as an independent contractor. *See Blackburn v. Columbia Med. Ctr.*, 58 S.W.3d 263, 276–77 (Tex. App.—Fort Worth 2001, pet. denied); *Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d 447, 457 (Tex. App.—San Antonio 2001, no pet.). The mere fact that both parties benefitted from the contract is not sufficient, without more, to establish a community of pecuniary interest. *See Blackburn*, 58 S.W.3d at 276 (concluding no

summary judgment evidence of community of pecuniary interest where record contained no evidence to show sharing of resources, pooling of funds, monetary investment, costs or benefits to either party and showed only limited evidence of mere convenience to parties arising from arrangement and shared general business interest). In light of the summary judgment record before us, we cannot conclude the trial court erred in granting summary judgment in favor of ICAC on the theory of joint enterprise. *See St. Joseph Hosp.*, 94 S.W.3d at 528 (while franchisors, wholesalers, and suppliers may benefit financially from downstream marketing of their goods or services, their interests in said activities are not held in "community" with franchisee, retailers, or customers because they are not shared "without special or distinguishing characteristics."); *City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d at 457 (concluding no evidence of community of pecuniary interest where TxDOT hired company to perform maintenance on traffic signal poles, company was paid by the number of poles it completed, and there was no pooling of resources or pooling of efforts; TxDOT simply hired company "to perform work as an independent contractor."). *Cf. Able*, 35 S.W.3d at 614 (concluding evidence produced at trial that project contemplated joint effort utilizing federal, state, and local funds; shared resources in furtherance of the ultimate purposes of providing mass transit; and realized economic gain on the investment was some evidence of community of pecuniary interest). We overrule Jennifer's sole issue.

We affirm the trial court's judgment.

/Molly Francis/
————————————————
MOLLY FRANCIS
JUSTICE

111314F.P05

−5−



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JENNIFER LOGAN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF CHRISTOPHER LOGAN, DECEASED, AND AS NEXT FRIEND OF COLLIN LOGAN, A MINOR, Appellants

No. 05-11-01314-CV          V.

IRVING CLUB ACQUISITION CORPORATION, Appellee

Appeal from the 116th Judicial District Court of Dallas County, Texas. (Tr.Ct.No. DC-11-11118).
Opinion delivered by Justice Francis, Justices Moseley and Lang participating.

        In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**. It is **ORDERED** that appellee Irving Club Acquisition Corporation recover its costs of this appeal from appellants Jennifer Logan, Individually and as Representative of the Estate of Christopher Logan, Deceased, and as Next Friend of Collin Logan, a Minor.


Judgment entered January 31, 2013.


                                        /Molly Francis/
                                        _____
                                        MOLLY FRANCIS
                                        JUSTICE